1 | James D. Weakley (State Bar No. 082853)
jim@walaw-fresno.com
2 | Brande L. Gustafson (State Bar No. 267130)
brande@walaw-fresno.com
3 | WEAKLEY & ARENDT
A Professional Corporation
4 | 5200 N. Palm Avenue, Suite 211
Fresno, CA 93704
5 | Telephone:  (559) 221-5256
Facsimile:  (559) 221-5262
6 |
7 | Richard M. Elias (Pro Hac Vice to be Filed)
relias@egslitigation.com
8 | ELIAS GUTZLER SPICER LLC
130 S. Bemiston Ave, Suite 302
9 | St. Louis, MO 63105
314-274-3321
10 | Attorneys for Plaintiff

**FILED**

**Oct 30, 2018**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**<span style="color:red">SEALED</span>**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

UNITED STATES *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF ARKANSAS *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF CALIFORNIA *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF COLORADO *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF CONNECTICUT *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF DELAWARE *ex rel.* Tammie Stutz, Pharm.D.;

DISTRICT OF COLUMBIA *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF FLORIDA *ex rel.* Tammie Stutz, Pharm.D.;

Case No.  2:18-cv-2887 JAM EFB

**FILED UINDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**
**DO NOT ENTER ON PACER**

COMPLAINT AND JURY DEMAND        2

STATE OF GEORGIA *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF HAWAII *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF ILLINOIS *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF INDIANA *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF IOWA *ex rel.* Tammie Stutz,
Pharm.D.;

STATE OF LOUISIANA *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF MARYLAND *ex rel.* Tammie
Stutz, Pharm.D.;

COMMONWEALTH OF
MASSACHUSETTS *ex rel.* Tammie
Stutz, Pharm.D.;

 STATE OF MICHIGAN *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF MINNESOTA *ex rel.*
Tammie Stutz, Pharm.D.;

STATE OF MONTANA *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF NEVADA *ex rel.* Tammie
Stutz, Pharm.D.;

STATE OF NEW HAMPSHIRE *ex rel.*
Tammie Stutz, Pharm.D.;

STATE OF NEW JERSEY *ex rel.*
Tammie Stutz, Pharm.D.;

COMPLAINT AND JURY DEMAND          3

STATE OF NEW MEXICO *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF NEW YORK *ex rel.* Tammie Stutz, Pharm.D.;

 STATE OF NORTH CAROLINA *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF OKLAHOMA *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF RHODE ISLAND *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF TENNESSEE, *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF TEXAS *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF VERMONT *ex rel.* Tammie Stutz, Pharm.D.;

COMMONWEALTH OF VIRGINIA *ex rel.* Tammie Stutz, Pharm.D.;

STATE OF WASHINGTON *ex rel.* Tammie Stutz, Pharm.D.; and

TAMMIE STUTZ, individually,

                    Plaintiffs,

vs.

EXPRESS SCRIPTS HOLDING COMPANY and EXPRESS SCRIPTS, INC.,

                    Defendants.

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

COMPLAINT AND JURY DEMAND            4

## I.   **INTRODUCTION**

1.     Plaintiff Tammie Stutz brings this action individually, as well as on behalf of Plaintiff United States and the Plaintiff States (the United States and Plaintiff States are collectively referred to herein as the "Government") under the Federal False Claims Act, 31 U.S.C. § 3729 – 3733 (the "False Claims Act" or "FCA"), and the false claims acts of the respective Plaintiff States against Defendant Express Scripts Holding Company and Express Scripts, Inc. (collectively "Express Scripts") to recover, among other things, damages and penalties owed as a result of a systemic fraud that Express Scripts has perpetrated against the Government for years.

2.     Specifically, Express Scripts has implemented company-wide dispensing policies in its mail-order pharmacies whereby pharmacies, without seeking doctor approval, unilaterally substitute certain prescriptions for drugs that are not equivalent or interchangeable to the drugs that are prescribed.  The substituted drugs are more expensive, often over 1000 percent more than the price of the prescribed drugs, and yield higher profits for Express Scripts at the expense of the payor of the claims.  This illicit scheme has affected multiple Government-funded healthcare programs, including Medicaid, TRICARE, and Medicare, resulting in substantial overpayments by the Government over the course of multiple years.

3.     Plaintiff Stutz was a pharmacist with Express Scripts for over six years.  While at Express Scripts, she discovered and tried to correct the illegal substitution practice by ordering that the scripts be filled correctly and reporting the errors internally.  Her supervisors, however, commanded her to stand down, follow the company's policies, and withdraw her internal reports designating the practice as erroneous.  When she refused, the company retaliated against her, and despite over six years of an unblemished record at Express Scripts, fired her.

4.     Plaintiff Stutz now seeks recovery on behalf of the Government for Express Scripts' illicit scheme, and on behalf of herself for Express Scripts' retaliatory conduct and wrongful termination.

/ / /

/ / /

COMPLAINT AND JURY DEMAND          5

## II.   JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the federal FCA claims under 31 U.S.C. § 3732(a), and 28 U.S.C. §§ 1331 and 1345.  The Court has subject matter jurisdiction over the Plaintiff State claims under 31 U.S.C. § 3732(b), because the claims seek recovery under state law for funds paid by the Plaintiff States and the action arises from the same transactions and occurrences as the federal FCA claim.  This Court has subject matter jurisdiction over Plaintiff Stutz's claim under the federal FCA for retaliatory conduct and wrongful termination under 31 U.S.C. § 3730(h) and 28 U.S.C. § 1331.  It further has subject matter jurisdiction over her common law wrongful termination claim under 28 U.S.C. § 1367 because said claim is so related to the claims in this action over which the Court has original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

6.      This Court has personal jurisdiction over Express Scripts because section 3732(a) of the FCA permits worldwide service of process, and Express Scripts is a United States domiciled company doing business throughout the United States.  Venue is appropriate in this District under section 3732(a) of the FCA because Express Scripts transacts business in this District, including Sacramento, can be found in this District, and because several of the illegal acts proscribed by the FCA occurred in this District.

## III.   PARTIES

7.      Plaintiff Stutz is a licensed pharmacist with over 15 years of experience who resides in St. Louis, Missouri.

8.      Express Scripts Holding Company and Express Scripts, Inc. are Delaware companies with their principal place of business in St. Louis, Missouri.  Express Scripts, Inc. is a wholly owned-subsidiary of Express Scripts Holding Company.  Express Scripts is the largest independent pharmacy benefit manager ("PBM") in the United States.

/ / /

/ / /

/ / /

COMPLAINT AND JURY DEMAND          6

## IV.   GENERAL ALLEGATIONS

**A.   Express Scripts' General Role as a PBM and Pharmacy.**

9.      A PBM is a third-party administrator of prescription drug programs for health plans, including commercial health plans, self-insured employer plans, and government plans. PBMs manage the pharmacy benefit programs and seek to negotiate favorable prices with pharmaceutical companies and pharmacies.  PBMs are primarily responsible for developing and maintaining a drug formulary (a list of approved medications under a health insurance policy), contracting with network pharmacies, negotiating discounts and rebates with drug manufacturers, and processing and paying prescription drug claims.  PBM's are employed by health plans primarily for their ability to help control and reduce costs, particularly the purchase price of the drugs.

10.      In addition to contracting with third-party pharmacies (such as Walgreens) for health plans, PBMs also have their own mail-order or home-delivery pharmacies, where patients have their prescriptions mailed directly to their homes.  The mail-order pharmacy option is a core component of the services PBMs provide to their clients.

11.      Express Scripts is the largest PBM in the country, providing PBM services to major insurers, large corporations who self-insure, and Government-related plans.  As part of its PBM services, Express Scripts operates its own mail-order pharmacies.  Express Scripts' mail-order pharmacy operation consists of seven non-dispensing order processing pharmacies, four high-volume automated dispensing delivery pharmacies, and one non-automated home delivery pharmacy.  It also consists of five contact centers, where Express Scripts provides licensed pharmacists and pharmacy technicians who are on call 24 hours a day to answer patients' questions and counsel them on their prescriptions.  In addition to the general mail-order pharmacies, Express Scripts has nine specialty home delivery pharmacies and 34 specialty branch pharmacies.  The mail-order pharmacy component is a major source of Express Scripts' annual revenue, generating consistently over $40 billion in annual product revenue.

12.      Express Scripts provides extensive PBM services for Government-related health plans, including Medicare Part D plans, Medicaid plans, and TRICARE (the health care program

COMPLAINT AND JURY DEMAND          7

for the United States Department of Defense Military Health System).  Express Scripts also sponsors its own prescription drug plans for Medicare Part D.  Express Scripts employs its mail-order pharmacy services extensively in connection with Government-related health plans.  For example, Express Scripts operates TRICARE's mail-order pharmacy, called TRICARE Pharmacy Home Delivery.

**B.    Express Scripts' Fraudulent Drug Substitution Scheme.**

13.    Drawing upon its specialized knowledge in the prescription drug industry, Express Scripts has implemented dispensing policies at its mail-order pharmacies whereby, without the knowledge or approval of the prescribers, it substitutes prescriptions for certain drugs with non-equivalent, costlier drugs, thereby inflating the revenue and profits that Express Scripts makes at the cost of the patient and payor.  This scheme often involves substituting the dosage form of the drug, where, for example, Express Scripts will switch a script for a capsule with a tablet form of the drug.

14.    Under certain situations pharmacists are permitted (and, under some laws, required) to substitute a prescription as written with an equivalent drug.  This most often occurs when a doctor prescribes a brand drug when generic equivalents are available.  There are, however, standards, laws, and regulations that govern such substitutions.

15.    The U.S. Food & Drug Administration ("FDA") publishes a definitive source on drug equivalents titled "Approved Drug Products with Therapeutic Equivalent Evaluations" (commonly referred to as the "Orange Book") which defines equivalence and lists all drugs with their therapeutic equivalents.  Under the Orange Book, drugs are "pharmaceutical equivalents" if they contain the same active ingredients, are of the same dosage form and route of administration, and are formulated to contain the same amount of active ingredient and to meet the same compendial or other applicable standards (i.e., strength, quality, purity, and identity).  Drugs are "therapeutically equivalents" only if they are pharmaceutical equivalents for which bioequivalence has been demonstrated, and they can be expected to have the same clinical effect and safety profile when administered to patients under conditions specified in the labelling.

COMPLAINT AND JURY DEMAND          8

Under the Orange Book, drugs may only be substituted if they are therapeutic equivalents, which, by definition, means they must be, among other things, of the same dosage form.

16.     Over 30 states have adopted the Orange Book as the law governing pharmacy substitution.  *See, e.g.,* Cal. Bus. & Prof. Code § 4073.5(a)(1) & (j)(2) (allowing substitutions only if a drug is "interchangeable," and defining interchangeable as therapeutically equivalent according to the Orange Book).  While the other states have not adopted the Orange Book as law, their laws still limit substitutions to drugs that are equivalent as to, among other things, dosage form.  *See, e.g.,* Ariz. Rev. Stat. § 32-1963.01 (allowing substitutions only for "generic equivalents, which is defined as drugs that, among other things, have "the identical amount of the same active chemical ingredients *in the same dosage form*") (emphasis added).  Additionally, many states require that substitutions may only occur if the drug being substituted is the lowest cost generic equivalent available.  *See, e.g.,* Ga. Code § 26-4-81(b).

17.     Thus, under both federal standards and state laws, a pharmacist may not unilaterally substitute a tablet form of a drug for a script written for a capsule form.

18.     The difference in dosage form can have material consequences to patients due to, among other things, differences in absorption rates.  It can also equate to a large difference in price.  Because of a variety of factors, including differences in the frequency of prescriptions of one drug form over the other, two drugs with the same active ingredient in the same amounts, but with different dosage forms, can have markedly different prices.

19.     Express Scripts, knowing this to be the case, has, in violation of law, set its dispensing policies at its mail-order pharmacies to take advantage of the price disparity.  One example is with the drug Prozac, a brand drug indicated for the treatment of a variety of depressive, obsessive, and anxiety disorders.  Prozac has the active compound fluouxetine hydrochloride ("fluoxetine") and comes in capsule form.  There are a variety of generic drugs that are therapeutic equivalents to Prozac, all of which have the same active ingredient of fluoxetine and the same dosage form of capsules.  There is, however, another brand drug called Sarafem, which has the same active ingredient of fluoxetine but is in tablet form.  Sarafem has only one indication: treatment of Premenstrual Dysphoric Disorder.  Prozac is not indicated for

COMPLAINT AND JURY DEMAND          9

this treatment.  Like Prozac, Sarafem has a number of generic therapeutic equivalents, all of which have the same active ingredient of fluoxetine and the same dosage form of tablets.

20.     Sarafem is substantially more expensive than Prozac, and, concomitantly, the generic forms of Sarafem are substantially more expensive than the generic forms of Prozac.  For example, the Federal Upper Limit (a legislatively-mandated maximum reimbursement amount for prescriptions charged to Medicaid) for a 20 mg capsule Prozac and its generic equivalents is currently $0.12 per capsule.  But for Sarafem and its generic equivalents the current Federal Upper Limit for 20mg tablets is $1.50 per tablet, making the tablet form of the drug *more than 1200 percent more expensive than the capsule form.*

21.     Express Scripts' dispensing policy at its mail-order pharmacies is to substitute, without prescriber consent, all prescriptions for Prozac capsules with the non-interchangeable tablet form of fluoxetine.  Express Scripts has employed a similar dispensing policy for multiple other drugs, ordering that prescriptions be substituted with non-therapeutic equivalents where Express Scripts can take advantage of pricing differentials—all at the cost of the patient, the payor, and the public.

**C.     Plaintiff Stutz Discovered the Scheme, Objected to It, and Was Fired.**

22.     Plaintiff Stutz began working for Express Scripts in 2011 as a consultation pharmacist in Express Scripts' call center.  Plaintiff Stutz was a trained and approved TRICARE pharmacist, and thus was qualified to and did handle calls from TRICARE patients.  Like many consulting pharmacists at Express Scripts, Plaintiff Stutz was a teleworker, meaning that she worked and handled all calls from a home office.

23.     As a consultation pharmacist, Plaintiff Stutz would handle patient calls and consult them on the medications they received through Express Scripts' mail-order pharmacy.  She consulted patients on issues ranging from side effects, drug interactions associated with drugs, and how to properly take the drugs.  One issue of particular importance that she consulted on was whether patients received the correct medication.  Because of the serious health risks implicated by improperly filled prescriptions, those calls were always routed directly to

COMPLAINT AND JURY DEMAND          10

pharmacists (as opposed to pharmacy technicians), who have the expertise to identify and counsel on prescription fill errors.

24.     Plaintiff Stutz had an unblemished record at Express Scripts.  Her annual year-end performance reviews for 2011 through 2017, uniformly stated that "Tammie's performance and demonstration of Express Way Values warrants a Target rating," a positive rating that earned her an annual bonus.

25.     In July of 2017, Plaintiff Stutz received a call from a patient that had been routed to her as a "Tablet ID," meaning that the patient was concerned that she had received the improper medication.  On that call, the patient told Plaintiff Stutz that her script for Prozac that she received through the mail-order pharmacy looked different than the medication she normally received.  Plaintiff Stutz compared the script as written with the script as dispensed, and realized that though the doctor had written the script for a generic form of "Prozac," Express Scripts switched the script to the tablet form of fluoxetine.  Plaintiff Stutz confirmed through the Orange Book that these drugs are not therapeutic equivalents, and thus were not interchangeable.  She then informed the patient that the script had been filled incorrectly and made arrangements for her to return her mis-filled script for the correct drug.  She further documented in the Express Scripts system that the script had been filled in error.

26.     Shortly thereafter her supervisor, George Katsiyiannis, contacted her and told her that she needed to call the patient back and tell her that the script had been filled correctly.  Plaintiff Stutz responded that she could not do that because the tablet form of fluoxetine was not interchangeable with the capsule form.  Her supervisor yelled at her and told her that the script was dispensed according to Express Scripts' dispensing policies and that she was obligated to follow them.  Plaintiff Stutz resisted, stating that she was obligated first and foremost to follow the law and her ethical duties as a pharmacist.

27.     Plaintiff Stutz researched the company dispensing policies and confirmed that the global dispensing policy at Express Scripts pharmacies was to substitute scripts written for fluoxetine capsules with fluoxetine tablets.  This meant that all patients receiving scripts for fluoxetine capsules, including Medicaid, TRICARE, Medicare, and other government plan

COMPLAINT AND JURY DEMAND          11

beneficiaries, received illegal drug substitutions pursuant to Express Scripts' policy.  Plaintiff Stutz, however, believed this policy was illegal and unethical and refused to follow it.

28.     In the following days, Plaintiff Stutz had multiple conversations and correspondence with her supervisor and others at Express Scripts, who continued to pressure her to call the patient back and tell her that the script was correctly filled.  They further ordered her to delete from the Express System her designation of the script as erroneously filled.  During these discussions, Katsiyiannis acknowledged that the drugs were not therapeutic equivalents, but told her she was obligated to be a professional and follow Express Scripts' policies.  Plaintiff Stutz remained firm that the decision was an error and refused to change the designation. Katsiyiannis responded by yelling at Plaintiff Stutz and suggesting that she was not a good fit at Express Scripts and should consider another job.

29.     In April 2018, Plaintiff Stutz received another call about a potential incorrectly filled prescription.  The patient was a TRICARE patient who had been prescribed Diltiazem CD (generic form of Cardizem CD), a drug indicated for the treatment of hypertension and angina (pain in the chest from coronary artery disease).  Express Scripts, however, had filled the script with Dilt-XR (generic for Dilacor-XR).  Dilt-XR was a discontinued drug, no longer being marketed by any drug company.  Though the drugs have the same active ingredient, they are not therapeutically equivalent due to material differences in the release mechanisms.

30.     Plaintiff Stutz researched the issue and concluded that the drugs were not equivalent, and assisted the patient in getting the appropriate medication.  She entered the script as an error in Express Scripts' system.

31.     Although she entered the script as an error, Plaintiff Stutz discovered that under Express Scripts' global dispensing policies (applying to all scripts, including scripts charged to Medicaid, TRICARE, Medicare, and other government programs) the mail-order pharmacies were instructed to disregard suffixes such as LA, XR, CD, XT, TZ, etc. written in many prescriptions, and substitute drugs with a different release mechanism or dosage form.  These suffixes, however, are material, and indicate a difference in release mechanisms and dosage form

COMPLAINT AND JURY DEMAND          12

(capsule versus tablet).  For these reasons, drugs with different suffixes are often not therapeutic equivalents.

32.   Shortly after Plaintiff Stutz entered the script as an error, Katsiyiannis contacted Plaintiff Stutz and told her that the script had been correctly filled pursuant to Express Scripts' dispensing guidelines, and that she needed to contact the patient and tell him there was no error. He further told her to remove the error entry in the system.  Again, Plaintiff Stutz resisted because the drugs were not equivalent.  Katsiyiannis again yelled at Plaintiff Stutz for not following orders.  He conceded that Diltiazem CD and Dilt-XR were not equivalents, but told her that she had to follow the company's dispensing guidelines.  When she further resisted, he yelled at her, saying that she was not doing her job and that if she continued her insubordination she would have to find another one.

33.   At or around the time of Plaintiff Stutz's resistance, Express Scripts took several steps to facilitate compliance with its illegal substitution policies.  First, it sent several mass emails to the pharmacists, including Stutz, explaining Express Scripts' dispensing policy that tablets and capsules of drugs of the same active ingredient and strength were interchangeable, and specifically stating that fluoxetine capsules were interchangeable with fluoxetine tablets. Second, following Plaintiff Stutz's second incident in April 2018, Express Scripts changed its policy of routing "Tablet ID" calls (where a patient is concerned about receiving the correct medication) from pharmacists to a policy whereby those calls were routed to pharmacy technicians, who are not qualified to make judgments on therapeutic equivalence.

34.   Further, following the April 2018 incident, Express Scripts retaliated against Plaintiff Stutz.  Despite over six years of positive performance reviews, Katsiyiannis told her, for the first time, that she was exceeding her "handle time" expectations, meaning that, in Express Scripts' estimation, she was spending too much time counseling patients and addressing their concerns.  Her supervisor told her that her average handle time – including not only the time on the phone with the patient, but the time spent entering notes into the system after the call— should not exceed 347 seconds (roughly five minutes).  Plaintiff Stutz exceeded this, at times, by about a minute, while at other times, she was on target or under.

COMPLAINT AND JURY DEMAND        13

35.     Her supervisor then gave Plaintiff Stutz a choice: she could either stop working from her home office and start working at Express Scripts' corporate office under close supervision, or she would be put on a six month probationary period, at the end of which a final decision would be made as to her continued employment.  For Plaintiff Stutz, the mother of two minor children, the requirement to come into the corporate office was an unwarranted and material change that would have worked substantial hardship on Plaintiff Stutz.

36.     In May 2018, Plaintiff Stutz wrote a letter to her supervisor, responding to the ultimatum she received.  In that letter, she expressed her concern about time quotas and how they were contrary to her duty as a pharmacist to give patients appropriate counselling and care.  She further expressed her concerns that the quota issue only surfaced after she had resisted the Express Scripts dispensing policies, and again documented her concerns with those policies.  She chose to continue working in her home office, as she had done without issue for over six years. She further objected to any negative consequences, such as a probationary period that her decision would trigger.

37.     In September 2018, well within the probationary period set by Express Scripts, Plaintiff Stutz was abruptly fired for cause.  The stated reason was her alleged mishandling of a single call related to a patient who was having difficulty getting a prescription filled.  Plaintiff Stutz spent over 30 minutes with the patient and the retail pharmacist trying to resolve the issue, and eventually escalated the issue to a more senior manager.

38.     Express Scripts' complaints about Plaintiff Stutz exceeding call quotas, the probationary period, and the purported reason it gave for terminating Plaintiff Stutz were all a sham, contrived by Express Scripts as a pretext to get rid of Plaintiff Stutz for resisting the illegal dispensing policies.  Plaintiff Stutz had received seven straight positive annual performance reviews, and her performance was only attacked after she objected to and refused to follow the dispensing policies.  Notably, although Express Scripts insisted to Plaintiff Stutz that its dispensing policies were appropriate and legal, it did not cite her refusal to comply with those policies as a basis for its firing decision, instead relying on pretextual reasons that were without bases.

COMPLAINT AND JURY DEMAND          14

**D.       Government Programs Affected by Express Scripts' Fraud.**

39.       Given its breadth of scope and reach, Express Scripts' fraudulent dispensing policies have resulted in false claims and higher costs to Government healthcare programs, including Medicaid, TRICARE, and Medicare.

*(1)     Medicaid*

40.       Medicaid is a joint federal-state program created in 1965 that provides health care benefits for certain groups, primarily the poor and disabled.  Each state administers a state Medicaid program.

41.       The federal Medicaid statute requires each participating state to implement a plan containing certain specified minimum criteria for coverage and payment of claims. 42 U.S.C. §§ 1396, 1396a(a)(13), 1396a(a)(30)(A).  While drug coverage is an optional benefit, the Medicaid programs of all states provide reimbursement for prescription drugs.  Medicaid beneficiaries typically receive covered drugs through pharmacies, which are reimbursed by state Medicaid agencies

42.       To achieve maximum cost efficiency, Medicaid programs have certain maximums for multi-source drugs (drugs that have multiple generic therapeutic equivalents).  For drugs that have at least three drug products listed as therapeutic and pharmaceutical equivalents under the Orange Book, the U.S. Centers for Medicare & Medicaid Services ("CMS") has established certain Federal Upper Limit prices ("FUL"), which are equal to 175 percent of the weighted average of the most recent Average Manufacturing Prices reported for such multiple source drugs.  42 C.F.R. § 447.514(a)(1) & (b)(1).  For multi-source drugs with an FUL, a state Medicaid agency may not reimburse a pharmacy for more than the FUL for the therapeutic equivalents of that multiple source drug class plus a state-established dispensing fee.  42 C.F.R. §§ 447.512(a) & 447.514(b)(1).

43.       Express Scripts' policy of substituting non-equivalent drugs to obtain a higher reimbursement rate than the FUL established for the prescribed drug is a violation of 42 C.F.R. §§ 447.512(a) and 447.514(b)(1).

/ / /

COMPLAINT AND JURY DEMAND          15

44.     Express Scripts' applied its illegal dispensing practices to claims against Medicaid in all 50 states for an extended period of time.  In so doing, Express Scripts submitted reimbursement requests to Medicaid providers that falsely certified—both expressly and impliedly—that Express Scripts was in compliance with all applicable laws and regulations and that it was not engaged in fraud or abuse.  These certifications came in the form of, among other things, the provider agreements with the Medicaid providers that impose, as a condition for participating in the program and payment, a continuing obligation on Express Scripts to comply with applicable laws and regulations and refrain from fraudulent and abusive conduct.

45.     In Plaintiff State California, for example, Express Scripts signed a Medi-Cal Provider Agreement that imposed on Express Scripts, as a condition of payment, continuing obligations to, among things "comply with all federal laws and regulations governing and regulating Medicaid providers."  The agreement also imposed anti-fraud and abuse obligations as follows:

> Provider agrees that it shall not engage in or commit fraud or abuse.  "Fraud" means an intentional deception or misrepresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or herself or some other person.  It includes any act that constitutes fraud under applicable federal or state law.  "Abuse" means either: (1) practices that are inconsistent with sound fiscal or business practices and result in unnecessary cost to the Medicare program, the Medi-Cal program, another state's Medicaid program, or other health care programs operated, or financed in whole or in part, by the Federal Government or any state or local agency in this state or any other state; (2) practices that are inconsistent with sound medical practices and result in reimbursement by the Medi-Cal program or other health care programs operated, or financed in whole or in part, by the Federal Government or any state or local agency in this state or any other state, for services that are unnecessary or for substandard items or services that fail to meet professionally recognized standards for health care.

46.     Express Scripts made similar representations regarding complying with applicable laws and regulations and avoiding fraud and abuse in its provider contracts with all states, including the Plaintiff States.

47.     In submitting these false claims to Medicaid providers, Express Scripts falsely certified and represented—both expressly and impliedly—that (1) it was in compliance with all laws, when it had, in fact, violated state and federal laws and regulations relating to drug substitution, and (2) that it was not engaged in fraud and abuse, when, in fact, the illegal script substitutions were deceptive and inconsistent with sound fiscal and business practices, resulting in unnecessary costs to the various Medicaid programs.

### *(b)     TRICARE*

48.     TRICARE (formerly known as the Civilian Health and Medical Program of the Uniformed Services or "CHAMPUS") is a health care program of the United States Department of Defense Military System.  TRICARE provides civilian health benefits for U.S. Armed Forces military personnel, military retirees, and their dependents, including some members of the Reserve Component.  TRICARE provides a comprehensive pharmacy benefit plan to its beneficiaries, for which Express Scripts is the PBM.  Express Scripts operates TRICARE's mail-order pharmacy program.

49.     Federal regulations require pharmacies to substitute brand name drugs with *only* their generic therapeutic equivalents as published in the Orange Book.  32 C.F.R. § 199.21(j)(2).  Express Scripts' contract with TRICARE provides that Express Scripts "shall dispense prescriptions in accordance with the TRICARE pharmacy program's mandatory generic substitution policy, per 32 CFR 199.2."

50.     Further, TRICARE has express anti-fraud and anti-abuse provisions, which, among other things, forbid all providers from engaging in abuse.  32 C.F.R. § 199.9.  Abuse is defined as "any practice that is inconsistent with accepted sound fiscal, business, or professional practice which results in a [TRICARE] claim, unnecessary cost, or [TRICARE] payment for services or supplies that are: (1) Not within the concepts of medically necessary and appropriate care, as defined in this part, or (2) that fail to meet professionally recognized standards for health

COMPLAINT AND JURY DEMAND          17

care providers.  The term abuse includes deception or misrepresentation by a provider, or any person or entity acting on behalf of a provider in relation to a [TRICARE] claim."  32 C.F.R. § 199.2(b).  Express Scripts contracts with TRICARE obligated it to adhere to the anti-fraud and anti-abuse regulations.

51.    Express Scripts' policy of substituting scripts for non-equivalent and costlier drugs is a violation of the express terms of TRICARE's generic substitution policy and its anti-fraud and abuse provisions.

52.    Express Scripts applied its illegal dispensing practices to claims it submitted to TRICARE for an extended period of time.  In so doing, Express Scripts submitted reimbursement requests to TRICARE that falsely certified—both expressly and impliedly—that (1) Express Scripts was in compliance with all applicable laws and regulations, when it had, in fact, violated laws and regulations relating to dispensing substitution, and (2) that Express Scripts was not engaged in fraud and abuse, when, in fact, the illegal script substitution policy was deceptive and inconsistent with sound fiscal and business practices, resulting in unnecessary costs to TRICARE.

### *(c)    Medicare Part D*

53.    Medicare is a federal program that provides federally-subsidized health insurance primarily for persons who are 65 or older or are disabled.  See 42 U.S.C. §§ 1395 et seq.  Part D of Medicare was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, to provide prescription drug benefits for Medicare beneficiaries.  Medicare Part D became effective January 1, 2006.

54.    CMS contracts with private companies (or "Part D sponsors") to administer prescription drug plans.  Such companies are regulated and subsidized by CMS pursuant to one-year, annually renewable contracts.  Part D sponsors enter into subcontracts with many pharmacies to provide drugs to the Medicare Part D beneficiaries enrolled in their plans.

55.    Express Scripts is both a Plan D sponsor and a PBM for other Plan D sponsors, and thus submits substantial claims for pharmaceutical drug reimbursement to the Medicare Part D program.  After Express Scripts fills a Medicare Part D script through its mail-order

COMPLAINT AND JURY DEMAND          18

pharmacies, Express Scripts submits to CMS an electronic notification of the drug dispensing event, called the Prescription Drug Event ("PDE"), which contains data regarding the prescription claim, including the service provider of the drug, the prescriber of the drug, the quantity dispensed, the amount paid to the pharmacy, and whether the drug is covered under the Medicare Part D benefit.

56.     Medicare Part D requires that scripts be dispensed in accordance with applicable laws and regulations.  Further, Medicare Part D has a disclosure requirement that requires pharmacies to inform a Part D patient of "any differential between the price of the drug and the price of the lowest priced generic version of that covered Part D drug that is therapeutically equivalent and bioequivalent and available at the pharmacy, unless the particular covered Part D drug being purchased is the lowest price therapeutically equivalent and bioequivalent version of that drug available at the pharmacy."  42 C.F.R. § 432.132.  Therapeutically equivalent drugs are only those drugs that are deemed to be therapeutic equivalents under the Orange Book.  42 C.F.R. § 423.100.

57.     Further, Medicare covers only reasonable and necessary medical services. *See, e.g.,* 42 U.S.C. § 1395y(a)(1)(A); *see also* 42 U.S.C. § 1320c-5(a)(1).

58.     Further, all contracts with a Part D sponsor must include a provision whereby the Plan sponsor agrees to comply with the applicable requirements and standards of the Part D program as well as the terms and conditions of payment governing the Part D program. 42 U.S.C. § 1395w-112(b)(1).

59.     Medicare Part D Plan sponsors must also certify in their contracts with CMS that they agree to comply with all federal laws and regulations designed to prevent fraud, waste, and abuse, including the FCA.  42 C.F.R. § 423.505(h)(l).

60.     In accordance with these express statutory and regulatory requirements, all contracts entered into between CMS and Plan D Plan sponsors from 2006 through the present include a provision in which the sponsor "agrees to comply with . . . Federal laws and regulations designed to prevent fraud, waste, and abuse, including, but not limited to, applicable provisions

COMPLAINT AND JURY DEMAND          19

of Federal criminal law, the False Claims Act (31 U.S.C. §§ 3729 et seq.), and the Anti-Kickback Statute (section 1128B(b) of the Act)."  42 C.F.R. § 423.505(h)(1).

61.     All subcontracts with Plan D sponsors must contain similar language obligating the subcontractor to comply with all applicable laws, regulations, and program requirements, including anti-fraud, anti-abuse, and anti-waste laws.  42 C.F.R. § 423.505(i)(4)(iv).

62.     A provider is further required to certify the accuracy, completeness, and truthfulness of all PDE claims data submitted to CMS, and the accuracy, completeness, and truthfulness of the claims data is a condition of payment under the Medicare Part D program.  42 C.F.R. § 423.505(k).

63.     Lastly, when submitting a claim using the CMS claim form, the provider certifies that the claim, whether submitted by the provider or on the provider's behalf, "complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment…."  Moreover, the provider certifies that the services claimed on the form "were medically necessary and personally furnished by [the provider] or were furnished incident to [the provider's] professional service. . . ."

64.     Express Scripts' illegal substitution policies applied to claims it submitted for reimbursement to Medicare Part D, resulting in millions of dollars of inflated claims to Medicare Part D for drugs that were not equivalent to the prescriptions that were written.  Thus, Express Scripts violated Medicare Part D's requirements that drugs be dispensed in compliance with all applicable laws and regulations and that the prescriptions be reasonable and necessary for the patient.  Further, in applying its illegal substitution policies to fetch a higher price for non-equivalent drugs, Express Scripts did not inform patients that there were drugs that were actual therapeutic equivalents to the scripts as written with lower prices than the script as dispensed, thereby violating the generic disclosure requirements in 42 C.F.R. § 432.132.

65.     Thus, in submitting Medicare Part D claims for payment, Express Scripts falsely certified—both expressly and impliedly—that, among other things, (1) Express Scripts was in compliance with all applicable laws and regulations, when it had, in fact, violated laws and regulations relating to dispensing substitution and disclosure, (2) that the scripts as dispensed

COMPLAINT AND JURY DEMAND          20

were reasonable and medically necessary, (3) that Express Scripts had not violated any anti-fraud, anti-abuse, or anti-waste statutes, and (4) that the claims data was truthful, accurate, and complete.

## V.    CLAIMS FOR RELIEF

**Count 1—Against All Defendants for Violations of the False Claims Act; Presenting False Claims for Payment (31 U.S.C. § 3729(a)(1)(A))**

66.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

67.     Relator seeks relief against Express Scripts under Section 3729(a)(1)(A) of the FCA.  31 U.S.C. § 3729(a)(1)(A).

68.     As a result of Express Scripts' illegal substitution policies, Express Scripts has caused false and fraudulent claims for payment to be presented to federal health care programs.

69.     Accordingly, Express Scripts knowingly caused false or fraudulent claims to be presented for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

70.     The false and fraudulent statements and omissions that Express Scripts made in connection with these false and fraudulent claims were material, as they had a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.  Indeed, had the federal healthcare programs been aware of the false and fraudulent nature of the claims, statements, and omissions, the claims would not have been paid.

71.     By reason of the false or fraudulent claims that Express Scripts knowingly caused to be presented to federal health care programs, the United States has been damaged in a substantial amount to be determined at trial, and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**Count 2—Against All Defendants for Violation of the False Claims Act; Use of False Statements (31 U.S.C. § 3729(a)(1)(B)**

72.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

/ / /

COMPLAINT AND JURY DEMAND        21

73.     As a result of Express Scripts' illegal substitution policies, Express Scripts knowingly made and/or caused others to make false records or statements that were material to getting false or fraudulent claims paid by federal health care programs.

74.     More specifically, Express Scripts made or caused others to make false certifications and representations that the reimbursements it sought for illegally substituted drugs were in full compliance with applicable federal and state laws prohibiting illegal substitutions, were not the product of fraudulent practices, and were for reasonable and medically necessary reasons.  Those false certifications, statements, and representations caused federal health care programs to pay out sums that would not have been paid if those programs had been made aware of the falsity of the certifications, statements, or representations.

75.     By reason of the false or fraudulent claims that Express Scripts knowingly caused to be presented to federal health care programs, the United States has been damaged in a substantial amount to be determined at trial, and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**Count 3—Against All Defendants for Violation of the Arkansas Medicaid Fraud False Claims Act, Ark. Code Ann. §§ 20-77-901 – 20-77-911**

76.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

77.     Express Scripts violated the Arkansas Medicaid Fraud False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Arkansas as described herein.

78.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Arkansas.

79.     The State of Arkansas, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Arkansas would not otherwise have paid.

80.     By reason of these payments, the State of Arkansas has been damaged, and continues to be damaged, in a substantial amount.

COMPLAINT AND JURY DEMAND          22

**Count 4—Against All Defendants for Violation of the California False Claims Act, Cal. Gov't Code §§ 12650-12656**

81.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

82.     Express Scripts violated the California False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of California as described herein.

83.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of California.

84.     The State of California, unaware of the false or fraudulent nature of these claims, paid such claims which the State of California would not otherwise have paid.

85.     By reason of these payments, the State of California has been damaged, and continues to be damaged, in a substantial amount.

**Count 5—Against All Defendants for Violation of the Colorado Medicaid False Claims Act, Col. Rev. Stat. Ann. §§ 25.5-4-303.5 – 25.5-4-310**

86.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

87.     Express Scripts violated the Colorado Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Colorado as described herein.

88.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Colorado.

89.     The State of Colorado, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Colorado would not otherwise have paid.

90.     By reason of these payments, the State of Colorado has been damaged, and continues to be damaged, in a substantial amount.

COMPLAINT AND JURY DEMAND          23

**Count 6—Against All Defendants for Violation of the Connecticut False Claims Act, Conn.**

**Gen. Stat. Ann. §§ 4-272 – 4-289**

91.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

92.     Express Scripts violated the Connecticut False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Connecticut as described herein.

93.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Connecticut.

94.     The State of Connecticut, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Connecticut would not otherwise have paid.

95.     By reason of these payments, the State of Connecticut has been damaged, and continues to be damaged, in a substantial amount.

**Count 7—Against All Defendants for Violation of the Delaware False Claims and**

**Report Act, Del. C. Ann. Tit. 6 §§ 1201-1211**

96.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

97.     Express Scripts violated the Delaware False Claims and Reporting Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Delaware as described herein.

98.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Delaware.

99.     The State of Delaware, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Delaware would not otherwise have paid.

100.     By reason of these payments, the State of Delaware has been damaged, and continues to be damaged, in a substantial amount.

COMPLAINT AND JURY DEMAND          24

**Count 8—Against All Defendants for Violation of the District of Columbia Medicaid Fraud Enforcement and Recovery Amendment Act of 2012, D.C. Code Ann. §§ 2-381.01 – 2.381.10**

101.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

102.    Express Scripts violated the District of Columbia Medicaid Fraud Enforcement and Recovery Amendment Act of 2012 by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the District of Columbia as described herein.

103.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the District of Columbia.

104.    The District of Columbia, unaware of the false or fraudulent nature of these claims, paid such claims which the District of Columbia would not otherwise have paid.

105.    By reason of these payments, the District of Columbia has been damaged, and continues to be damaged, in a substantial amount.

**Count 9—Against All Defendants for Violation of the Florida False Claims Act, Fla. Stat. Ann. §§ 68.081 – 68.092**

106.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

107.    Express Scripts violated the Florida False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Florida as described herein.

108.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Florida.

109.    The State of Florida, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Florida would not otherwise have paid.

COMPLAINT AND JURY DEMAND            25

110.    By reason of these payments, the State of Florida has been damaged, and continues to be damaged, in a substantial amount.

**Count 10—Against All Defendants for Violation of the Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168 – 49-4-168.6**

111.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

112.    Express Scripts violated the Georgia False Medicaid Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Georgia as described herein.

113.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Georgia.

114.    The State of Georgia, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Georgia would not otherwise have paid.

115.    By reason of these payments, the State of Georgia has been damaged, and continues to be damaged, in a substantial amount.

**Count 11—Against All Defendants for Violation of the Hawaii False Claims to the State Act, Hawaii Rev. Stat. §§ 661-21 – 661-31**

116.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

117.    Express Scripts violated the Hawaii False Claims to the State Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Hawaii as described herein.

118.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Hawaii.

119.    The State of Hawaii, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Hawaii would not otherwise have paid.

COMPLAINT AND JURY DEMAND        26

120. By reason of these payments, the State of Hawaii has been damaged, and continues to be damaged, in a substantial amount.

**Count 12—Against All Defendants for Violation of the Illinois False Claims Act, 740 Ill. Comp. Stat. Ann. §§ 175/1-175/8**

121. Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

122. Express Scripts violated the Illinois False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Illinois as described herein.

123. As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Illinois

124. The State of Illinois, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Illinois would not otherwise have paid.

125. By reason of these payments, the State of Illinois has been damaged, and continues to be damaged, in a substantial amount.

**Count 13—Against All Defendants for Violation of the Indiana False Claims Act, Ind. Code Ann. §§ 5-11-5.5-1 – 5-11.5.5-18**

126. Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

127. Express Scripts violated the Indiana False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Indiana as described herein.

128. As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Indiana.

129. The State of Indiana, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Indiana would not otherwise have paid.

COMPLAINT AND JURY DEMAND          27

130.    By reason of these payments, the State of Indiana has been damaged, and continues to be damaged, in a substantial amount.

**Count 14—Against All Defendants for Violation of the Iowa False Claims Act, Iowa Code Ann. §§ 685.1 – 685.7**

131.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

132.    Express Scripts violated the Iowa False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Iowa as described herein.

133.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Iowa.

134.    The State of Iowa, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Iowa would not otherwise have paid.

135.    By reason of these payments, the State of Iowa has been damaged, and continues to be damaged, in a substantial amount.

**Count 15—Against All Defendants for Violation of the Louisiana Medical Assistance Programs Integrity Law, La. Stat. Ann. §§ 437.1 – 440.16**

136.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

137.    Express Scripts violated the Louisiana Medical Assistance Programs Integrity Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Louisiana as described herein.

138.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Louisiana

139.    The State of Louisiana, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Louisiana would not otherwise have paid.

COMPLAINT AND JURY DEMAND          28

140.    By reason of these payments, the State of Louisiana has been damaged, and continues to be damaged, in a substantial amount.

**Count 16—Against All Defendants for Violation of the Maryland False Health Claims Act, Md. Code Ann., Health-Gen. §§ 8-801 – 8-811**

141.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

142.    Express Scripts violated the Maryland False Health Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Maryland as described herein.

143.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Maryland.

144.    The State of Maryland, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Maryland would not otherwise have paid.

145.    By reason of these payments, the State of Maryland has been damaged, and continues to be damaged, in a substantial amount.

**Count 17—Against All Defendants for Violation of the Massachusetts False Claims Law, Mass. Gen. Laws Ann. Ch. 12, §§ 5A – 5O**

146.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

147.    Express Scripts violated the Massachusetts False Claims Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Massachusetts as described herein.

148.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Massachusetts.

149.    The State of Massachusetts, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Massachusetts would not otherwise have paid.

COMPLAINT AND JURY DEMAND         29

150.     By reason of these payments, the State of Massachusetts has been damaged, and continues to be damaged, in a substantial amount.

**Count 18—Against All Defendants for Violation of the Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. §§ 400.601 – 400.615**

151.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

152.     Express Scripts violated the Michigan Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Michigan as described herein.

153.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Michigan.

154.     The State of Michigan, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Michigan would not otherwise have paid.

155.     By reason of these payments, the State of Michigan has been damaged, and continues to be damaged, in a substantial amount.

**Count 19—Against All Defendants for Violation of the Minnesota False Claims Act, Minn. Stat. Ann.  §§ 15C.01 – 15C.16**

156.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

157.     Express Scripts violated the Minnesota False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Minnesota as described herein.

158.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Minnesota.

159.     The State of Minnesota, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Minnesota would not otherwise have paid.

COMPLAINT AND JURY DEMAND          30

160.    By reason of these payments, the State of Minnesota has been damaged, and continues to be damaged, in a substantial amount.

**Count 20—Against All Defendants for Violation of the Montana False Claims Act, Mont. Code Ann. §§ 17-8-401 – 17-8-416**

161.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

162.    Express Scripts violated the Montana False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Montana as described herein.

163.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Montana.

164.    The State of Montana, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Montana would not otherwise have paid.

165.    By reason of these payments, the State of Montana has been damaged, and continues to be damaged, in a substantial amount.

**Count 21—Against All Defendants for Violation of the Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. Ann. §§ 357.010 – 357.250**

166.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

167.    Express Scripts violated the Nevada Submission of False Claims to State or Local Government Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Nevada as described herein.

168.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Nevada.

169.    The State of Nevada, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Nevada would not otherwise have paid.

COMPLAINT AND JURY DEMAND          31

170.     By reason of these payments, the State of Nevada has been damaged, and continues to be damaged, in a substantial amount.

**Count 22—Against All Defendants for Violation of the New Hampshire Medicaid Fraud and False Claims Law, N.H. Rev. Stat. Ann. §§ 167:61-B – 167:61-E**

171.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

172.     Express Scripts violated the New Hampshire Medicaid Fraud and False Claims Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New Hampshire as described herein.

173.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the New Hampshire.

174.     The State of Hampshire, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Hampshire would not otherwise have paid.

175.     By reason of these payments, the State of New Hampshire has been damaged, and continues to be damaged, in a substantial amount.

**Count 23—Against All Defendants for Violations of the New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32C-1 – 2A:32C-18**

176.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

177.     Express Scripts violated the New Jersey False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New Jersey as described herein.

178.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New Jersey.

179.     The State of New Jersey, unaware of the false or fraudulent nature of these claims, paid such claims which the State of New Jersey would not otherwise have paid.

COMPLAINT AND JURY DEMAND          32

180.    By reason of these payments, the State of New Jersey has been damaged, and continues to be damaged, in a substantial amount.

### Count 24—Against All Defendants for Violation of the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 44-9-1 – 44-9-14, and New Mexico Medicaid False Claims Act, §§ 27-14-1 – 27-14-15

181.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

182.    Express Scripts violated the New Mexico Fraud Against Taxpayers Act and the New Mexico Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New Mexico as described herein.

183.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New Mexico.

184.    The State of New Mexico, unaware of the false or fraudulent nature of these claims, paid such claims which the State of New Mexico would not otherwise have paid.

185.    By reason of these payments, the State of New Mexico has been damaged, and continues to be damaged, in a substantial amount.

### Count 25—Against All Defendants for Violation of the New York False Claims Act, N.Y. Fin. Law §§ 187 – 194

186.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

187.    Express Scripts violated the New York False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New York as described herein.

188.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New York.

COMPLAINT AND JURY DEMAND          33

189.   The State of New York , unaware of the false or fraudulent nature of these claims, paid such claims which the State of New York would not otherwise have paid.

190.   By reason of these payments, the State of New York has been damaged, and continues to be damaged, in a substantial amount.

**Count 26—Against All Defendants for Violation of the North Carolina False Claims Act, N.C. Gen. Stat. Ann. §§ 1-605 – 1-618**

191.   Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

192.   Express Scripts violated the North Carolina False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of North Carolina as described herein.

193.   As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of North Carolina.

194.   The State of North Carolina, unaware of the false or fraudulent nature of these claims, paid such claims which the State of North Carolina would not otherwise have paid.

195.   By reason of these payments, the State of North Carolina has been damaged, and continues to be damaged, in a substantial amount.

**Count 27—Against All Defendants for Violation of the Oklahoma False Claims Act, Okl. Stat. Ann. Tit. 63, §§ 5053 – 5054**

196.   Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

197.   Express Scripts violated the Oklahoma False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Oklahoma as described herein.

198.   As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Oklahoma.

COMPLAINT AND JURY DEMAND          34

199. The State of Oklahoma, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Oklahoma would not otherwise have paid.

200. By reason of these payments, the State of Oklahoma has been damaged, and continues to be damaged, in a substantial amount.

**Count 28—Against All Defendants for Violation of the Rhode Island False Claims Act, R.I. Gen. Laws Ann. §§ 9-1.1-1 – 9-1.1-9**

201. Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

202. Express Scripts violated the Rhode Island False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Rhode Island as described herein.

203. As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Rhode Island.

204. The State of Rhode Island, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Rhode Island would not otherwise have paid.

205. By reason of these payments, the State of Rhode Island has been damaged, and continues to be damaged, in a substantial amount.

**Count 29—Violation of the Tennessee False Claims Act, Tenn. Code Ann. §§4-18-101 – 4-18-108, and the Tennessee Medicaid False Claims Act, Tenn. Code. Ann. §§ 75-5-181 – 75-5-185**

206. Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

207. Express Scripts violated the Tennessee False Claims Act and Tennessee Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Tennessee as described herein.

/ / /

/ / /

COMPLAINT AND JURY DEMAND          35

208.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Tennessee.

209.    The State of Tennessee, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Tennessee would not otherwise have paid.

210.    By reason of these payments, the State of Tennessee has been damaged, and continues to be damaged, in a substantial amount.

**Count 30—Against All Defendants for Violation of the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. §§ 36.001 – 36.132**

211.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

212.    Express Scripts violated the Texas Medicaid Fraud Prevention Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Texas as described herein.

213.    As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Texas.

214.    The State of Texas, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Texas would not otherwise have paid.

215.    By reason of these payments, the State of Texas has been damaged, and continues to be damaged, in a substantial amount.

**Count 31—Against All Defendants of the Vermont False Claims Act, Vt. Stat. Ann. Tit. 32, §§ 630-642**

216.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

217.    Express Scripts violated the Vermont False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Vermont as described herein.

COMPLAINT AND JURY DEMAND          36

218.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Vermont.

219.     The State of Vermont, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Vermont would not otherwise have paid.

220.     By reason of these payments, the State of Vermont has been damaged, and continues to be damaged, in a substantial amount.

**Count 32—Against All Defendants for Violation of the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 – 8.01-216.1**

221.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

222.     Express Scripts violated the Virginia Fraud Against Taxpayers Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Virginia as described herein.

223.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Virginia.

224.     The State of Virginia, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Virginia would not otherwise have paid.

225.     By reason of these payments, the State of Virginia has been damaged, and continues to be damaged, in a substantial amount.

**Count 33—Against All Defendants for Violation of the Washington Medicaid Fraud False Claims Act, Wash. Rev. Code Ann. §§ 74.66.005 – 74.66.130**

226.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

227.     Express Scripts violated the Washington Medicaid Fraud False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Washington as described herein.

COMPLAINT AND JURY DEMAND          37

228.     As a result of the misconduct alleged herein, Express Scripts knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Washington.

229.     The State of Washington, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Washington would not otherwise have paid.

230.     By reason of these payments, the State of Washington has been damaged, and continues to be damaged, in a substantial amount.

**Count 34—Against All Defendants for Retaliation and Wrongful Termination in Violation of the False Claims Act, 31 U.S.C. 3730(h)**

231.     Plaintiff Stutz realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

232.     The False Claims Act forbids employers from discharging, demoting, suspending, threatening, harassing, or otherwise discriminating against an employee for an employee's lawful action done in furtherance of a False Claims Act or for any other efforts to stop the employer from committing one or more False Claims Act violations.  31 U.S.C. § 3730(h)(1).

233.     Express Scripts violated this section by harassing, discharging, threatening, demoting, and discriminating against Plaintiff Stutz for refusing to follow the illegal dispensing policies and for reporting those violations internally to the company and externally to the patients affected.

234.     As a result, Plaintiff Stutz has suffered substantial damages, and is entitled to all remedies available at law and equity, including those listed in 31 U.S.C. § 3730(h)(2).

**Count 35—Common Law Wrongful Termination**

235.     Plaintiff Stutz realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

236.     By refusing to follow illegal dispensing policy, Plaintiff Stutz refused to violate the law and well-established and clear mandates of public policy as expressed in statutes, regulations, and rules promulgated by government bodies.

/ / /

COMPLAINT AND JURY DEMAND          38

237.    Further, by reporting the scripts filled pursuant to this illegal policy as erroneous, Plaintiff Stutz reported wrongdoing and violations of law to her superiors.

238.    As a result of Plaintiff's Stutz refusal to follow the illegal policy and her reporting of the wrongdoing to her superiors, Plaintiff Stutz was harassed, threatened, demoted, and ultimately fired.

239.    As a result of this retaliation and wrongful termination, Plaintiff Stutz has suffered substantial injury and is entitled to all available remedies available at law or equity.

240.    Express Scripts' conduct was malicious, willful, wanton, and done in reckless disregard of Plaintiff Stutz's rights, and thus she is entitled to an award of punitive damages.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Stutz requests that judgment be entered against Defendants as follows:

(1) Treble the Federal and Plaintiff State Government's damages in an amount to be determined at trial, plus the maximum statutorily-allowed penalty for each false claim submitted in violation of the FCA or State statutes set forth above;

(2) Plaintiff Stutz's damages under the False Claims Act and applicable common law that she sustained as a result of Express Scripts' retaliation and wrongful termination;

(3) Punitive damages for Express Scripts' malicious, willful, wanton, and reckless conduct in retaliating against and wrongfully terminating Plaintiff Stutz;

(4) Plaintiff Stutz's reasonable attorneys' fees and costs;

(5) The maximum Relator award available under the FCA and equivalent false claims statutes of the Plaintiff States described above; and

(6) For any further relief the Court deems appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT AND JURY DEMAND          39

## VII.    DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated:  October 30, 2018

Respectfully Submitted,

By: /s/ James D. Weakley
James D. Weakley (Bar No. 082853)
Brande L. Gustafson (Bar No. 267130)
WEAKLEY & ARENDT
A Professional Corporation
5200 N. Palm Avenue, Ste. 211
Fresno, CA 93704
(559) 221-5256
(559) 221-5262 (fax)

ELIAS GUTZLER SPICER LLC
Richard M. Elias (*pro hac vice* to be filed)
130 S. Bemiston Avenue, Suite 302
St. Louis, MO 63105
(314) 274-3311

*Attorneys for Plaintiffs*

**DO NOT SERVE**

COMPLAINT AND JURY DEMAND          40